IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01092-MEH

HASAN JONES,

    Plaintiff,

v.

CLAY BRADSHAW, in his individual capacity,

    Defendant.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

    Defendant Clay Bradshaw[1] seeks an order of dismissal arguing that Plaintiff failed to exhaust his administrative remedies at the prison facility before filing the present action. In support of his argument, Defendant attached to his motion an affidavit and copies of grievance forms filed by the Plaintiff. Accordingly, the Court notified the parties that it would convert the motion to dismiss to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). Plaintiff filed a response brief to which he attached additional exhibits, and Defendant filed a reply in support of his motion. The Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether he properly exhausted his administrative remedies before bringing this action and, thus, grants Defendant's motion and dismisses Plaintiff's claim without prejudice.

## **FINDINGS OF FACT**

    The Court makes the following findings of fact viewed in the light most favorable to Plaintiff, who is the non-moving party in this matter.

---

[1] The present motion was brought by both Bradshaw and Defendant Dean Williams; however, Mr. Williams was dismissed by agreement of the parties on October 16, 2019. ECF 25, 26.

1.      During all relevant times, Plaintiff was incarcerated at Sterling Correctional Facility ("SCF").

2.      On April 28, 2017, Plaintiff filed a Step One grievance complaining that, on April 13, 2017, he was eating in the cafeteria when Defendant approached and told Plaintiff to move to a "handicap table"; when Plaintiff asked whether it was required that he move, Defendant answered no. Grievance Form, ECF 21-1 at 23. Plaintiff notes that he asked to see a shift commander, but Defendant denied the request and left. *Id.* Defendant returned and told Plaintiff to go outside, but Plaintiff continued to eat; Defendant then directed Plaintiff to "cuff up." *Id.* Plaintiff contends that when he turned around to cuff up, Defendant "sprayed" him with pepper spray and "did not use proper procedure." *Id.* Plaintiff's requested remedy was that Defendant "be fired." *Id.*

3.      Nathan Wagner responded to the Step One grievance saying, "Thank you for bringing this issue to our attention. This issue has been addressed at the supervisory level. Your grievance is denied on a procedural basis. The remedy requested does not meet the criteria in AR 850-04 Grievance Procedure which states 'DOC employee, contract worker, or volunteer discipline/reprimand, damages for pain and suffering, and exemplary or punitive damages are not remedies available to offenders.'" *Id.*

4.      On June 2, 2017, Plaintiff filed a Step Two grievance form on which he copied the same information contained in his Step One grievance. Grievance Form, ECF 21-1 at 24. Plaintiff also requested that Defendant "be fired." *Id.*

5.      Gary Little responded to the Step Two grievance saying, "This issue has been addressed at the supervisory level with Sergeant Bradshaw and the necessary steps taken to minimize similar incidents in the future. As explained to you, your grievance is denied on a procedural basis. The remedy you requested is that Sergeant Bradshaw be terminated. The remedy requested does not meet

the criteria in AR 850~04 (Grievance Procedure), which states 'DOC employee, contract worker, or volunteer discipline/reprimand, damages for pain and suffering, and exemplary or punitive damages are not remedies available to offenders.'" *Id.*

6. On June 22, 2017, Plaintiff filed a Step Three grievance form on which he copied the same information contained in his Step One and Step Two grievances. Grievance Form, ECF 21-1 at 25. Again, Plaintiff requested that Defendant "be fired." *Id.*

7. Anthony DeCesaro responded to the Step Three grievance providing the same information as that provided by Mr. Wagner and Mr. Little and saying, "The time constraints outlined in AR# 850-04 are now expired regarding these events, so there will be no further review of this matter. You have <u>not</u> exhausted your administrative remedies in this matter based upon your failure to satisfactorily request allowable relief. This is the final administrative action in this matter." July 14, 2017 Letter, ECF 21-1 at 26.

## **LEGAL STANDARDS**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine issue of material fact exists "unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c); *World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (citation omitted); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown " 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and...if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005); *see also Hasan*, 935 F.3d at 1098 ("'Unsubstantiated allegations carry no probative weight in summary judgment

proceedings.").

"The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi–Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## **ANALYSIS**

The only claim remaining in this action is Plaintiff's First Claim for Relief alleging excessive force in violation of the Eighth and Fourteenth Amendments against Defendant in his individual capacity. ECF 26. Defendant asserts that he is entitled to summary judgment because Plaintiff failed to exhaust required administrative remedies before filing his claim by failing to request an available remedy under Colorado Department of Corrections ("CDOC") Administrative Regulation ("AR") 850-04. Plaintiff counters that he "complied with all critical procedural rules" and that "requesting an 'available' remedy under AR 850-04 is simply not a 'critical procedural rule' under" prevailing law. Plaintiff also contends that the governing prison regulation fails to provide an available remedy for his injuries. Defendant replies that Plaintiff's contentions are not supported by applicable law nor the material facts of this case.

The Prison Litigation Reform Act ("PLRA") requires that a claim regarding prison conditions must be exhausted before a prisoner may challenge those conditions by filing suit. *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."). Specifically, the exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

5

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). The burden is on Defendant to assert any failure to exhaust as a defense and he does so here pursuant to Fed. R. Civ. P. 56. Thus, if the evidence presented does not create a genuine issue of material fact as to whether Plaintiff's constitutional claim against Defendant was properly exhausted, the claim must be dismissed without prejudice. *See Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (noting that dismissal of unexhausted claims on summary judgment should be without prejudice)).

Only when all possible administrative remedies have been exhausted with respect to prison conditions may a federal court consider such a claim. *Porter*, 534 U.S. at 524; *see also York v. Fed. Bureau of Prisons*, 379 F. App'x 737, 740 (10th Cir. 2010). Prison conditions for this purpose include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. The Court finds that *Porter*'s holding encompasses Plaintiff's claim, construed liberally and in the light most favorable to Plaintiff, regarding Defendant's alleged force by Oleoresin Capsicum ("OC" or "pepper") spray. *See id.*

With respect to Defendant's exhaustion challenge, the parties do not dispute the facts in any material way; that is, all parties agree the Plaintiff timely submitted grievance forms for Steps One through Three pursuant to AR 850-04 complaining that Defendant "did not use proper procedure" in dispersing pepper spray and asking that Defendant "be fired" for his alleged conduct. The parties differ, however, as to whether Plaintiff's requested remedy served as a procedural defect which foreclosed his ability to properly exhaust administrative remedies pursuant to the PLRA, and

6

whether the prison provided "available" remedies for Plaintiff to exhaust. The Court will address each issue in turn.

**I.      "Proper" Exhaustion**

The Supreme Court has determined that a prison's own requirements define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). In this case, all parties agree that the CDOC's grievance system is governed by AR 850-04. Defendant cites to § III.C., which defines a "Remedy" under the regulation:

> A meaningful response, action, or redress requested by the offender grievant at the step 1, 2, or 3 level, which may include modification of policy, restoration of or restitution for property, or assurance that abuse will not recur. DOC employee, contract worker, or volunteer discipline/reprimand, damages for pain and suffering, and exemplary or punitive damages are not remedies available to offenders.

ECF 21-1 at 6. The grievance forms Plaintiff submitted regarding Defendant's use of pepper spray all sought Defendant's termination of employment and were "procedural[ly] denied" as in contravention of this section. *See* ECF 21-1 at 23, 24, 25. In fact, at Step Three, the grievance officer explained that, because Plaintiff sought a remedy that was "not available," the grievance was denied; the officer further instructed Plaintiff that "[y]ou have not exhausted your administrative remedies in this matter based upon your failure to satisfactorily request allowable relief." ECF 121-1 at 26. This instruction is consistent with AR 850-04 § III.E.3.c(2), which provides:

> The grievance officer may deny the grievance on procedural grounds, without addressing the substantive issues, if the grievance is incomplete, inconsistent with a former step, incomprehensible, illegible, *requests relief that is not available*, fails to request relief, or in any other way fails to comply with the provisions of this regulation. When a grievance is denied for a procedural error, the grievance officer will certify in the response that the offender has **not** exhausted the grievance process.

ECF 21-1 at 11 (emphasis in italics added) (emphasis in bold in original).

7

Plaintiff argues that the Supreme Court "only requires exhaustion of certain 'critical' procedures" and that he "complied with all critical procedural rules as evidenced by the fact that CDOC officials addressed his grievance on the merits, identified and preserved evidence related to the claims, conducted a timely investigation, and took administrative action against Defendant Bradshaw." Resp. at 6-7 (citing *Woodford*, 548 U.S. at 89). First, the Court disagrees that *Woodford* stands for the proposition that a prisoner need only comply with "certain critical" procedures required by a prison facility. In fact, the Supreme Court determined that the PLRA requires "proper exhaustion," which is defined as "using **all** steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in italics in original; emphasis in bold added); *see also id.* at 93 ("Section 1997e(a) refers to 'such administrative remedies as are available,' and thus points to the doctrine of exhaustion in administrative law."). The *Woodford* Court did not define the term, "critical," nor distinguished between "critical" and "non-critical" procedures but, rather, used the term in the following context:

> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.
>
> \*\*\*
>
> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.

*Id.* at 90-91, 95. Plaintiff's attempt to carve out an exception to proper exhaustion by limiting it to compliance with only "critical" procedural rules contravenes not only *Woodford*, but also the Supreme Court's recent opinion in *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) in which the Court rejected any sort of "special circumstances" exception and affirmed that mandatory PLRA

exhaustion is not subject to judicial discretion. *Id.* ("the PLRA prevent[s] a court from deciding that exhaustion would be unjust or inappropriate in a given case.").

Moreover, the Tenth Circuit has concluded that "the doctrine of substantial compliance does not apply." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)). In *Thomas*, the court found the district court did not err in concluding the plaintiff did not complete all required steps saying that the plaintiff, "[o]nce notified of deficiencies at the formal grievance stage, . . . chose not to avail himself of the opportunity to cure them. He then chose to continue to submit formal grievances that were contrary to defendants' reasonable interpretation of the grievance requirements." *Id.* Similarly, here, the Plaintiff was notified at each step that his grievance was procedurally denied for failure to request available relief under AR 850-04, but he continued to submit the forms until he was instructed at Step Three that he had not exhausted administrative remedies.

Even if the Plaintiff were correct that prevailing law requires a prisoner to complete only "critical" procedural rules to establish proper exhaustion, the Plaintiff fails to demonstrate that any compliance with such "critical" rules resulted in "meaningful administrative review." Plaintiff contends his compliance is "evidenced by the fact that CDOC officials addressed his grievance on the merits, identified and preserved evidence related to the claims, conducted a timely investigation, and took administrative action against Defendant Bradshaw." Resp. 7. Plaintiff cites two reports supporting his contention: a "Use of Force Report" (ECF 23-1) and a "Use of Force After Action Review" (ECF 23-5). The former is dated April 18, 2017 and the latter is dated April 28, 2017; although Plaintiff's Step One grievance is dated April 28, 2017, the facility did not document receipt of the grievance until May 19, 2017. Therefore, Plaintiff's evidence, on its face, reflects that neither report was initiated or completed as a "result" of Plaintiff's grievances. *See* Resp. 7.

9

In the same vein, Plaintiff fails to demonstrate a factual issue as to whether the prison "granted his requested remedy" and, thus, he "effectively prevailed on his grievances" and "fully exhausted his claims." Resp. 8-9. Although the facility responded to Plaintiff's grievances saying "the issue has been dealt with on a supervisory level," such response was not a "grant" of any requested remedy. It is undisputed that Plaintiff's grievances reflect his request that Defendant be terminated from employment. The fact that Defendant was otherwise disciplined notwithstanding Plaintiff's grievances (see ECF 23-1, 23-5) does not translate to a meaningful response to Plaintiff's grievances.[2]

Accordingly, the Court finds Plaintiff fails to raise a genuine issue of material fact as to whether he properly exhausted based on compliance with "critical" procedural rules or on any "grant" of his requested remedy.

## II. "Available" Remedies

Although a defendant bears the burden of "proving that the plaintiff did not [exhaust his] administrative remedies," once the defendant has carried that burden, "the onus falls on the plaintiff to show that remedies were unavailable to him." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

The Supreme Court recently affirmed the PLRA's requirement that a prisoner need only exhaust "available" administrative remedies. *Ross*, 136 S. Ct. at 1859 ("an inmate is required to

---

[2]Plaintiff's cited cases standing for the proposition that granted relief constitutes full exhaustion (*see* Resp. 8) are non-binding, not persuasive, or otherwise distinguishable from the circumstances presented here. For example, the court in *Ray v. Jones*, 2007 WL 397084, at *10 (W.D. Okla. Feb. 1, 2007) found that the *plaintiff* initiated the investigation and disciplinary process by taking "the required initial step . . . of informing staff members of the incident." *Id.* ("The policies underlying the exhaustion requirement were satisfied in this case by Plaintiff's initial informal communications with the officers on the next shift and the administrative investigation that followed."). Here, the evidence reflects an investigation was initiated and action was taken *before* the facility received Plaintiff's complaint.

10

exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'") (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Court noted three circumstances under which remedies are "unavailable": (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Here, Plaintiff does not argue that he was "thwarted" from engaging in the grievance process and, in fact, it is undisputed that he completed Steps One through Three of the process. Plaintiff also does not seem to argue that he was unable to discern or navigate the required process; in fact, he strongly argues that he completed the process despite a lack of "available" remedies. Rather, Plaintiff appears to assert that, under the alleged circumstances, the prison was unable to provide him any relief and, thus, the grievance process operated as a dead end. Specifically, Plaintiff argues that the three remedies identified in AR 850-04 would not have provided him relief for injuries from the pepper spray.

As set forth above, "Remedy" is defined in the regulation as "[a] meaningful response, action, or redress requested by the offender grievant at the step 1, 2, or 3 level, which may include modification of policy, restoration or restitution for property, or assurance that abuse will not recur." ECF 21-1 at 6. Focusing on the three suggested remedies, Plaintiff argues that the first would not suffice since Defendant was found to have acted against established policy, the second is insufficient because no property is at issue here, and the third is ineffectual because the persons responding to his grievance had "no connection to the underlying incident." While Plaintiff may be correct as to

the first two suggestions, the Tenth Circuit has addressed his argument concerning the third in *Burnett v. Oklahoma Dep't of Corr.*, 737 F. App'x 368, 372 (10th Cir. 2018). The plaintiff in that case, Mr. Burnett, alleged that he could not obtain through the ODOC grievance process the relief requested in his complaint because "no staff member reviewing grievances can rule on the legality of a prison policy." The court rejected the plaintiff's argument saying, "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Id.* (quoting *Booth v. Churner*, 532 U.S. at 741 n.6).

Moreover, the Court disagrees that the list of remedies identified in AR 850-04 is exhaustive. Rather, the regulation specifies only what does *not* constitute a remedy (i.e. employee discipline, compensatory damages, and punitive damages). Plaintiff claims that he and his "undersigned counsel" are "genuinely unaware of any remedy available through CDOC that would afford even a modicum of relief to inmates subjected to excessive force." Resp. 12. However, nothing in the regulation indicates that a prisoner who claims injuries from the dispersal of pepper spray is prohibited from seeking medical care not already provided, or accommodation as a result of such injuries, or even an apology from the officer. In other words, the Court finds AR 850-04 does not operate as a "simple dead end." *See Ross*, 136 S. Ct. at 1859 ("Once again: '[T]he modifier "available" requires the possibility of some relief.'").

Nevertheless, "[e]ven where the available remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available." *Burnett v. Miller*, 738 F. App'x 951, 953 (10th Cir. 2018) (quoting *Jernigan*, 304 F.3d at 1032 (internal quotation marks omitted)). "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Id.* (quoting *Booth*, 532 U.S. at 739); *see also Campbell v. Jones*, 684 F. App'x 750, 753–54 (10th Cir.

12

2017) ("there is no futility exception to the exhaustion rule").

The Court concludes that Plaintiff has failed to demonstrate a genuine issue of material fact as to whether remedies under AR 850-04 were "unavailable" for purposes of PLRA exhaustion.

### III.     Dismissal With or Without Prejudice

As set forth above, dismissal for failure to exhaust administrative remedies is typically without prejudice. *Fields*, 511 F.3d at 1113. Under some circumstances, such as when any attempt to cure the procedural flaw would be untimely, courts have held that dismissal should be with prejudice. *See Duffy v. Daugherty*, No. CIV–09–908–D, 2010 WL 2079674, at *2 n.6 (W.D. Okla. Apr. 22, 2010) (citing *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007) ("While failure to exhaust administrative remedies usually results in a dismissal without prejudice, when exhaustion is no longer possible, dismissal may be with prejudice.")). Here, the Defendant has neither argued nor demonstrated that any attempt by the Plaintiff to exhaust his administrative remedies would be untimely[3]; accordingly, the Court will dismiss the action without prejudice in accordance with prevailing law.

### CONCLUSION

In this case, the Plaintiff fails to raise a genuine issue of material fact demonstrating that he properly exhausted his remedies for his excessive force claim or that remedies provided under the governing prison regulation are "unavailable." Given the Supreme Court's mandate that "unexhausted claims cannot be brought in court" (*Jones*, 549 U.S. at 211), the Court must **grant** the Defendant's Motion to Dismiss, converted to a Motion for Summary Judgment [filed July 19, 2019;

---

[3]Although Defendant generally sets forth the time lines necessary for submission of CDOC grievances (Affidavit of Tony DeCesaro, July 15, 2019, ¶¶ 7-8), and the factual allegations appear to show that any attempt by Plaintiff to file grievances related to the allegations in the Complaint might be untimely, Defendant failed to argue that any untimeliness might result in dismissal with prejudice.

13

ECF 21] and dismiss this action without prejudice.

      SO ORDERED.

      DATED at Denver, Colorado, this 25th day of October, 2019.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge